UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFRED A. ARMENDARIZ,<br><br>                    Plaintiff,<br><br>          v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of the Social<br>Security Administration,<br><br>                    Defendant. | NO. EDCV 04-00833-SS<br><br>**MEMORANDUM DECISION AND ORDER** |

Plaintiff seeks review of Defendant's decision denying him disability benefits, having filed a Complaint on July 13, 2004. Plaintiff is represented by Bill LaTour, Esq. Defendant is represented by Assistant United States Attorney Kathryn M. Ritchie. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c).

This matter is before the Court on the parties' Joint Stipulation that was filed on August 1, 2005. For the reasons stated below, the decision of the Commissioner is AFFIRMED.

**PROCEDURAL HISTORY**

On October 31, 2001, Plaintiff, then age thirty-nine (39), filed applications for Disability Insurance Benefits and Supplemental Security Income disability benefits under Title II and Title XVI of the Social Security Act, respectively.[1] (Administrative Record ("AR") 71-73, 114-15). Plaintiff alleged a disability onset date of November 1996 on the bases of Hepatitis C, edema,[2] chronic fatigue, and anxiety attacks. (AR 79). He further alleged that pain and swelling in his limbs rendered him unable to work as of June 22, 2001. (AR 79).

The Social Security Administration (the "Agency" or "Commissioner") denied Plaintiff's claims for benefits on April 11, 2002.[3] (AR 59, 60-63, 119). The Agency found that Plaintiff's condition was not severe enough to prevent him from working. (AR 60). On reconsideration, the Agency affirmed its decision. (AR 58, 65-69, 120). Plaintiff subsequently requested a hearing by an Administrative Law Judge ("ALJ"). (AR 29).

---

[1] Title II of the Social Security Act is codified at 42 U.S.C. §§ 401-434 ("Federal Old-Age, Survivors, and Disability Insurance Benefits"). Title XVI of the Social Security Act is codified at 42 U.S.C. §§ 1381-1385 ("Supplemental Security Income for Aged, Blind, and Disabled").

[2] Edema is an "accumulation of an excessive amount of watery fluid in cells or intercellular tissues." Stedman's Medical Dictionary 566-67 (27th ed. 2000).

[3] The Agency earlier denied two previous applications for Disability Insurance Benefits made by Plaintiff. (Supplemental Administrative Record ("Supp. AR") 13; AR 87). These cases were not reopened in connection with Plaintiff's third application. (Supp. AR 13).

A hearing before ALJ Charles E. Stevenson was conducted on December 10, 2003, at which Plaintiff appeared with counsel and testified. (AR 30-57). A vocational expert also testified.

On March 9, 2004, ALJ Stevenson issued a decision denying benefits. (AR 10-22; Supp. AR 10-22). Plaintiff sought review of this decision before the Appeals Council. (AR 6, 7). On June 2, 2004, the Appeals Council denied review, and the ALJ's decision became the final decision of the Commissioner. (AR 3-5). Plaintiff commenced the instant action on July 13, 2004.

**FACTUAL BACKGROUND**

**A.    Initial Assessment Of Plaintiff's Mental Health**

The medical evidence includes an initial assessment of Plaintiff's mental health that was rendered on July 17, 2001 by Dr. Dale Beaman, a psychologist with the San Bernardino County Department of Behavioral Health. (AR 309-13). On this date, Plaintiff presented with depression and anxiety resulting from his nine-year-old son's affliction with cerebral palsy. (AR 309, 312). Among Dr. Beaman's mental status findings were the following: (1) organized and coherent speech, (2) average intellectual functioning, (3) no cognitive defects, (4) organized and coherent thought process, (5) no delusions, (6) average insight, (7) average judgment, and (8) appropriate affect. (AR 312). Dr. Beaman's "dysfunction rating" for Plaintiff was "moderate," and he observed that Plaintiff was "unable to work due to depression, anxiety." (AR 313). Dr. Beaman referred Plaintiff to Upland Community Counseling

for further treatment. (AR 313). Apart from Dr. Beaman's report dated July 17, 2001, there are no other records of treatment by Dr. Beaman himself, as Plaintiff was placed in the care of different mental health professionals.

### B.  Consultative Examinations

On February 20, 2002, Plaintiff underwent a consultative internal medicine examination by Dr. Denny H. Lee. (AR 121-24). On February 21, 2002, he underwent a consultative psychiatric evaluation by Dr. Reynaldo Abejuela. (AR 125-30). To the extent that the Court's analysis of Plaintiff's claims requires discussion of the consultative examinations, it will be provided below.

### C.  Plaintiff's Testimony

At the hearing before the ALJ, Plaintiff testified about his mental health, among other subjects.[4] He indicated that he currently saw a psychiatrist every three months for anxiety and panic attacks that had worsened because of the death of his son. (AR 39-40). When asked what he was doing for his condition, Plaintiff responded that he was "just seeing my psychologist and he's rendering my prescriptions." (AR 40). Plaintiff described his panic attacks as occurring three to four times every two to three weeks. (AR 41). When they occurred, Plaintiff stated, he had to take Xanax and Ativan and lie down, a treatment that calmed him "about seventy-five percent of the time." (AR 41).

---

[4]  Plaintiff cited other conditions not at issue in this appeal, including kidney problems, hepatitis, and high blood pressure.

As for his physical limitations, Plaintiff believed that he could sit for no longer than forty-five minutes and stand for no longer than fifteen minutes. (AR 49). He did not believe that he could walk one block. (AR 49-50). "Very small objects" were the heaviest items that Plaintiff thought he could lift repeatedly in a single day. (AR 50).

### D.   The Vocational Expert's Testimony

Ms. Kelly Winn-Boaitey testified at the hearing as a vocational expert. She identified Plaintiff's past relevant work as stock clerk and security guard. (AR 54). The ALJ posed a hypothetical to Ms. Winn-Boaitey involving an individual who could perform "light" work[5] with occasional climbing, balancing, stooping, kneeling, crouching, and crawling. (AR 54). Ms. Winn-Boaitey stated that such an individual could perform Plaintiff's past work as security guard. (AR 54). She indicated the same for an individual who could do light work with no climbing, balancing, stooping, kneeling, crouching, and crawling. (AR 54). When the ALJ altered the hypothetical to include an individual with the physical limitations described by Plaintiff, Ms. Winn-Boaitey responded that such a person could not perform any of Plaintiff's past work or any work at all. (AR 54-55).

\\\
\\\
\\\

---

[5] The Agency's formulation of light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b); 20 C.F.R. § 416.967(b).

**THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[6] and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

\\\
\\\

---

[6] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. § 404.1510; 20 C.F.R. § 416.910.

>    (3) Does the claimant's impairment meet or equal one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.
>
>    (4) Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.
>
>    (5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54 (citing Tackett). Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity,[7] age, education, and work experience. Tackett, 180 F.3d at 1098, 1100;

---

[7] Residual functional capacity is "the most [one] can still do despite [his] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. § 404.1545(a); 20 C.F.R. § 416.945(a).

Reddick, 157 F.3d at 721; 20 C.F.R. § 404.1520(g); 20 C.F.R. § 416.920(g). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Tackett). When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable, and the ALJ must take the testimony of a vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

**THE ALJ'S DECISION**

At the first step of the sequential evaluation process, the ALJ observed that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of his disability. (Supp. AR 15). Next, the ALJ found that Plaintiff had the medically determinable impairments of (1) Hepatitis C and (2) depression and anxiety caused by polysubstance and alcohol abuse, both of which were severe.[8] (Supp. AR 20).

At the third step, the ALJ found that Plaintiff's impairments did not meet or equal any of the impairments appearing in the "Listing of Impairments" set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Supp. AR 20). In the fourth step of his analysis, the ALJ weighed the

---

[8] An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities, which include walking, standing, sitting, and lifting. 20 C.F.R. § 404.1521; 20 C.F.R. § 416.921.

medical evidence in determining Plaintiff's residual functional capacity. (Supp. AR 15-21). The ALJ concluded that Plaintiff was capable of: (1) lifting/carrying ten pounds frequently and twenty pounds occasionally, (2) standing/walking for six hours out of an eight-hour workday, (3) sitting for two hours out of an eight-hour workday, and (4) occasionally climbing, balancing, stooping, kneeling, crouching, or crawling. (Supp. AR 21). He also concluded that Plaintiff had no severe nonexertional (mental) limitations absent the abuse of alcohol and drugs. (Supp. AR 21). In analyzing Plaintiff's residual functional capacity, the ALJ considered Plaintiff's subjective allegations, but did not find them totally credible. (Supp. AR 17, 20).

Having addressed Plaintiff's functional limitations, and based on testimony by the vocational expert, the ALJ found that Plaintiff was able to perform his past work as security guard. (Supp. AR 21). Accordingly, the ALJ determined that Plaintiff was not disabled, and a step five inquiry whether Plaintiff was able to perform some other work was unnecessary. (Supp. AR 21).

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (citing Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

**DISCUSSION**

Plaintiff's sole contention is that the ALJ erred by failing to consider the opinion of Dr. Dale Beaman, whom Plaintiff describes as the "treating psychologist." The Court disagrees.

Even if contradicted, a treating doctor's opinion may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (citing Reddick, 157 F.3d at 725); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (citing Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)). The opinion at issue here is the assessment of Plaintiff's mental health by Dr. Beaman that was completed on July

17, 2001 for purposes of Plaintiff's initial intake into the San Bernardino County Department of Behavioral Health. (AR 309-13).

As noted earlier, Dr. Beaman's mental status findings included the following: (1) organized and coherent speech, (2) average intellectual functioning, (3) no cognitive defects, (4) organized and coherent thought process, (5) no delusions, (6) average insight, (7) average judgment, and (8) appropriate affect. (AR 312). Dr. Beaman's "dysfunction rating" for Plaintiff was "moderate," and he opined that Plaintiff was "unable to work due to depression, anxiety." (AR 313).

While the ALJ did not expressly discuss Dr. Beaman's opinion, this omission does not constitute a violation of the "treating physician" rule, as Plaintiff urges. First, final responsibility for deciding the issue of disability is reserved to the Commissioner, rather than a treating physician. 20 C.F.R. § 1527(e)(1); 20 C.F.R. § 416.927(e)(1). Statements by a medical source that a claimant is "'disabled'" or "'unable to work,'" such as those by Dr. Beaman, do not mean that the Commissioner will determine that a particular claimant is disabled. Id.; see also Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005) (opinion of treating physician not binding on ALJ with respect to existence of impairment or ultimate determination of disability) (citation omitted).

Second, the record establishes that Dr. Beaman's encounter with Plaintiff was limited only to his initial assessment on behalf of the county. Apart from Dr. Beaman's report dated July 17, 2001, there are no other records of treatment by Dr. Beaman himself, as Plaintiff was

11

subsequently referred to the care of different mental health professionals. (AR 317). Specifically, it was Drs. Aleyamma Mathew and Oscar Balilo at Upland Community Counseling who treated Plaintiff after July 17, 2001. (AR 287-307). Given Dr. Beaman's very limited treatment relationship with Plaintiff, his findings were not entitled to controlling weight.  20 C.F.R. § 404.1527(d)(2)(i) & (ii) (weight accorded to a treating physician's opinion dependent on length of the treatment relationship, frequency of visits, and nature and extent of treatment received); 20 C.F.R. § 416.927(d)(2)(i) & (ii) (same).

Third, an ALJ may satisfy his burden of providing specific and legitimate reasons "'by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (quoting Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986)); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (citing Magallanes).  Here, the ALJ offered an accurate and richly detailed summary of Plaintiff's medical history, including the observations and diagnoses of the physicians who treated Plaintiff for his physical and mental impairments from 1997 through 2003.  The ALJ's review of the medical evidence spans nearly six pages of his ten-page decision. (Supp. AR 15-20).  Though the ALJ did not expressly reject any findings by Dr. Beaman, as Plaintiff's argument suggests, his extensive review and interpretation of the medical evidence in Plaintiff's case satisfies the rule set forth in Magallanes.

Fourth, treatment notes subsequent to Dr. Beaman's initial assessment of Plaintiff's mental health demonstrate that Plaintiff's

condition stabilized and even improved. On February 22, 2002, Plaintiff reported a decreasing level of anxiety to Dr. Mathew, who noted that Plaintiff's compliance with medication (Risperdal and Klonopin) was good and without side effects. (AR 307). Plaintiff, in fact, indicated shortly thereafter that he did not want to pursue therapy and wished to become a "meds only" patient. (AR 306). On April 19, 2002, Plaintiff stated that he was less depressed, calmer and relaxed, and feeling better. (AR 302). Plaintiff remarked similarly on June 21, 2002 and August 3, 2002, though he expressed sadness over the death of his son. (AR 297, 298, 301). On September 12, 2002, he began treatment with Dr. Balilo, who then diagnosed Plaintiff with anxiety disorder, not otherwise specified. (AR 291-94). Dr. Balilo assigned Plaintiff a GAF of sixty.[9] (AR 294). On October 23, 2002, Plaintiff reported some anxiety, but denied delusions, audio or visual hallucinations, and suicidal or homicidal intent. (AR 287). Dr. Balilo observed that Plaintiff's insight, judgment, and impulse control were adequate. (AR 287).

In late 2002, Plaintiff began mental health treatment at Kaiser Permanente. (AR 375-77). His diagnosis on November 27, 2002 was "generalized anxiety," for which he was prescribed Xanax. (AR 350, 378, 379, 401). In December 2002, his anxiety was "improving." (AR 371). Plaintiff's last mental health assessment of record was simply

---

[9] "GAF" refers to the "Global Assessment of Functioning" Scale. A GAF score of 51-60 denotes "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks)" or "moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. rev. 2000).

"anxiety." (AR 403). This assessment was rendered on September 10, 2003 by Dr. Thomas F. Amato, Plaintiff's physician at the Riverside-San Bernardino County Indian Health Clinic. (AR 403). Significantly, Dr. Amato had earlier issued two formal "opinions" of disability on Plaintiff's behalf, neither of which cited a mental impairment as their basis. These opinions were dated December 13, 2002 and July 28, 2003. (AR 406, 419). Dr. Amato's unelaborated diagnosis, combined with the above evidence of record, illustrates improvement with medication.

Fifth, Plaintiff's consultative psychiatric examination establishes that his mental impairment was not disabling. Dr. Reynaldo Abejuela performed this examination on February 21, 2002. (AR 125-30). Dr. Abejuela concluded that Plaintiff had no severe impairment in his occupational and social functioning, notwithstanding some mild evidence of psychosis. (AR 129). Dr. Abejuela found that Plaintiff had no severe restrictions in daily activities and that he was able to follow simple and complex job instructions so long as he was not under the influence of drugs or alcohol. (AR 129-30). Dr. Abejuela's opinions were based on independent clinical findings (a mental status examination). (AR 127-28). In this situation, a consultative report alone may furnish substantial evidence for the ALJ's decision. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (opinion of a nontreating source based on independent clinical findings may itself be substantial evidence) (citing Magallanes, 881 F.2d at 751).

Finally, the Court notes that an ALJ need not discuss all of the evidence presented in interpreting the evidence and developing the

14

record.[10]  Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citing Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984)).  As reflected above, the ALJ cited and discussed the probative evidence in his decision with respect to Plaintiff's mental health.  As also indicated above, Dr. Beaman's July 2001 opinion was not controlling because of his limited, onetime encounter with Plaintiff.  Consequently, Plaintiff's argument that the ALJ erred by not considering this opinion is without merit.  Id. (ALJ not required to discuss evidence that is neither significant nor probative).

---

[10]  The ALJ did consider the applicability of the Contract With America Advancement Act. (Supp. AR 19).  In 1996, Congress enacted Section 105 of the Contract with America Advancement Act, including a subsection entitled "Denial of Disability Benefits to Drug Addicts and Alcoholics."  42 U.S.C. § 423(d)(2)(C).  This statute and the regulations promulgated thereunder operate to deny social security disability benefits to claimants whose alcoholism or drug addiction is a contributing factor material to the determination of his or her disability.  See 20 C.F.R. § 416.935.

Addressing the application of these provisions, the Ninth Circuit held in Bustamante v. Massanari, 262 F.3d 949 (9th Cir. 2001), that the five-step sequential evaluation must first be conducted "without separating out the impact of alcoholism or drug addiction." Bustamante, 262 F.3d at 955.  If after conducting this inquiry, the ALJ concludes that an individual is disabled and there is medical evidence of his drug addiction or alcoholism, then it must be determined whether the claimant would still be found disabled if he stopped using alcohol or drugs.  Id. (citing 20 C.F.R. §§ 404.1535, 416.935).  At this stage, the claimant would bear the burden of proving that his alcoholism or drug addiction is not a contributing factor material to his disability determination.  Ball v. Massanari, 254 F.3d 817, 822-23 (9th Cir. 2001); see also Sousa v. Callahan, 143 F.3d 1240, 1245 (9th Cir. 1998) (remanding to give claimant an opportunity to present evidence relevant to this issue).  Here, the ALJ conducted the five-step evaluation and concluded that Plaintiff was not disabled.  Thus, the ALJ was not required to make the second determination, i.e., whether he would still be disabled if he stopped using alcohol or drugs.

In sum, and contrary to Plaintiff's assertion, the ALJ's analysis does not offend the treating physician rule. The omission of Dr. Beaman's opinion does not compel a different conclusion under the circumstances outlined above.

**CONCLUSION**

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice. The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED: October 18, 2005.

_____/s/_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE